# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : | Case No. 1:15-cv-699 |
| Plaintiff, | : : : | Judge Thomas M. Rose |
| v. | : : | |
| WILLIAM M. APOSTELOS, et al., | : : | |
| Defendants. | : | |

## ENTRY AND ORDER DENYING DEFENDANT WILLIAM M. APOSTELOS'S MOTION FOR CHANGE OF VENUE (DOC. 39)

This case is before the Court on the Motion for Change of Venue (Doc. 39) filed by Defendant William M. Apostelos. Mr. Apostelos seeks to move this matter from this District to the Northern District of Ohio, the same district where he is currently incarcerated. Plaintiff United States Securities and Exchange Commission (the "Commission") filed an Opposition (Doc. 42) to the Motion for Change of Venue, in response to which Mr. Apostelos has filed a Reply (Doc. 49). This matter is therefore ripe for review.

Under 28 U.S.C. § 1404(a), the Court may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district to which all parties have consented." This statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted).

When considering a transfer request under Section 1404(a), the first question is whether

the action "might have been brought" in the transferee court. *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002). If the answer is "yes," the Court then considers "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Stewart*, 487 U.S. at 30). The party seeking transfer has the burden of showing that transfer is warranted. *Copeland Corp. v. Choice Fabricators, Inc.*, 492 F. Supp. 2d 783, 789 (S.D. Ohio 2005).

As to the first question, Mr. Apostelos asserts that his business partner in OVO LLC and Midwestern L.L.C. lived in the Northern District of Ohio and solicited and brokered many clients from his home there. The Court therefore accepts, for purposes of the Motion before it, that this action might have been brought in the Northern District.

Under the second part of the analysis, the Motion for Change of Venue fails. Mr. Apostelos argues that transfer is appropriate because (1) "no party currently lives or otherwise resides or does business in the Southern District of Ohio," which makes litigating in this District inconvenient, and (2) "due to the publicity associated with [his] criminal charges and subsequent conviction . . . it would be impossible to obtain a fair trial on the S.E.C.'s allegations should the case go to trial." (Doc. 39 at 2.) These arguments do not support transfer of this action.

Transfer to the Northern District of Ohio may be more convenient for Mr. Apostelos, but it would be less convenient for numerous other individuals involved in this case. Defendant Connie Apostelos is incarcerated in Kentucky, closer to the Southern District. She has not responded to the Motion for Change of Venue, but it cannot be disputed that any court in the

Northern District is farther away from her current place of incarceration. In addition, the majority of the investors who were victims of the alleged fraudulent scheme in this case reside in the Southern District. (*See* Doc. 42-1 at ¶ 8 (stating 250 investors reside in the Southern District, whereas only 2 reside in the Northern District).) That the alleged fraud was perpetrated primarily in the Southern District, and more specifically the Dayton area, is another reason why retaining jurisdiction in this District is appropriate. *See Jamhour*, 211 F. Supp. 2d at 945 (factors relevant to consideration of the public interest under § 1404(a) include "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law")*.*

Retaining this case in the Southern District also advances the interests of judicial economy. As noted by the Commission, this Court presided over four related criminal cases, including the criminal case that led to Mr. Apostelos's imprisonment, and four other related civil cases. (Doc. 42 at 8-9 (citing cases).) This Court's familiarity with the underlying facts weighs heavily against transferring this case to a new judge in another district. *See Proctor & Gamble Co. v. Team Technologies, Inc.*, Case No. 1:12-cv-552, 2012 WL 5903126, at *7 (S.D. Ohio Nov. 26, 2012).

Finally, Mr. Apostelos's argument that he cannot obtain a fair trial in this District due to the publicity given his case is not well-founded. The standard for transferring a case due to prejudice resulting from pretrial publicity is high and must "be sustained not as a matter of speculation but as a demonstrable reality." *United States v. Angelus*, 258 Fed. Appx. 840, 844 (6th Cir. 2007) (quoting *United States ex rel. Darcy v. Handy*, 351 U.S. 454, 462 (1956)). Under Fed. R. Crim. P. 21(a), a change of venue is proper only if "the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. Proc. 21(a). In *Angelus*, the Sixth Circuit affirmed the denial of a request to

3

transfer venue because the limited media coverage of the alleged crime "did not create an inflammatory, circus-like atmosphere which pervaded both the courthouse and surrounding community." 258 F. App'x at 844. Similarly, there is no evidence of an inflammatory, circus-like atmosphere pervading the community in this case. The Sixth Circuit continued, however, that even if there had been extensive media coverage in *Angelus*, it still would have been inadequate to create a presumption of prejudice. *Id.* "[E]xtensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair." *Id.* at 845 (quoting *Dobbert v. Florida*, 432 U.S. 282, 303 (1977)). "Rather, a defendant must show a 'trial atmosphere . . . utterly corrupted by press coverage.'" *Id.* (quoting *Murphy*, 432 U.S. at 303). As Mr. Apostelos has not met this high standard, transfer on the grounds that he cannot obtain a fair trial in this District is not warranted.

For the above reasons, the Court **DENIES** the Motion for Change of Venue (Doc. 39). **DONE** and **ORDERED** in Dayton, Ohio, this Thursday, August 16, 2018.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE